FRUGÉ, Judge.
This is an expropriation suit brought by the State of Louisiana, through the Department of Highways (hereinafter called the State) against Nola Martin Sonnier, wherein the State expropriated 9.267 acres out of a 23.467 acre plot of land owned by defendant for the purpose of constructing an exit ramp on the Interstate 10 Highway project.
Prior to the taking, July 22, 1964, defendant owned a rectangular piece of property measuring approximately 680 feet bordering a parish gravel road by a depth of I,300 feet. This land is situated one and one-half to two miles northwest of the City of Lafayette, and about two miles of the Town of Scott.
As a result of the taking, defendant was left with an irregularly shaped plot of land totaling 14.2 acres which land, because Interstate 10 is a limited access throughway, now has no access to any public road.
Both sides utilized two expert appraisers in arriving at the market value of the property taken and severance damages. Mr. Chappuis, one of the State’s expert appraisers, utilized the market data approach and concluded that the value of the land taken amounted to $12,020.00,[1] using a front land-rear land method of evaluation. He also felt that there were severance damages in the sum of $5,630.00. His total estimate was $17,930.00 (including fencing).
Mr. Fleming, who was the State’s other appraiser, valued the land on a square foot *184 basis using the market data method and arrived at a total value of $12,110.00 for the 9.267 acres expropriated. He estimated the severance damages to the remainder at $9,940.00 giving a total award of $23,868.00 (including fencing).
Mr. Babineaux testified on behalf of defendant. From utilizing comparable sales in the vicinity, he valued defendant’s property at $2,350.00 per acre, or $21,775.00 for the 9.267 acres expropriated. He also felt that the value of the remainder of the tract would be diminished by fifty percent of its value, or $16,685.00. These awards for the taking and for damages totaled $38,460.00.
It was stipulated by counsel for both parties that defendant’s other expert appraiser, Mr. Hammer, would testify substantially the same as Mr. Babineaux.
After considering all this testimony, the trial court placed a value on the land of $1,800.00 per acre and awarded defendant $16,680.00 for the land expropriated plus $280.00 for the fences destroyed plus $12,-780.60, representing fifty percent of the value of the remainder as severance damages. This brought the total award to $29,440.60, or $5,872.60 more than was placed on deposit by plaintiff.
From this award, defendant alone appealed.
Defendant-appellant urges that the trial court erred in attributing weight to the testimony of plaintiff’s appraisers who used few comparables and were not as well-informed about the land values of the area as were defendant’s appraisers.
While each of the State’s appraisers used only four comparable sales to establish the value of the land, they considered a large number of sales in that area in determining which of the sales were most comparable to the land in question and although they relied heavily upon sales made by certain heirs of an estate, there is nothing in the record to indicate that these sales are not valid comparables to the subject property.
Nor is the appellant’s attack upon the qualifications of the State’s expert witnesses persuasive. Neither of the State’s witnesses were engaged in buying, selling and developing real estate in the Lafayette area; but they were full-time expert appraisers. Mr. Chappuis was a resident of Lafayette, and Mr. Fleming, a resident of New Iberia, evidenced an ample understanding and knowledge of the real estate values and trends in Lafayette Parish to render a sound opinion.
Therefore, we cannot say that the trial court erred in considering and attributing weight to the testimony of the State’s appraisers.
Appellant also contends that it was error for the State’s appraisers to evaluate the property as a whole unit and to fail to consider that the tract might be conveniently divided into smaller parcels and sold at an appreciably higher price.
This contention primarily involves a question of the highest and best use of the land. The State’s expert appraisers both judged the land to be suitable for small farm or rural homesite. Defendant’s experts opined that the highest and best use of the land was as suburban homesites, with some possibility of light industrial use. The trial, court found the highest and best use of the land to be “for rural homesites”. We find no error with this conclusion. Therefore it is unnecessary for us to consider what the property might be sold for if it were developed into a subdivision. There is no testimony in the record pertaining to this possibility. Nor is there even any testimony in regard to the price that could be obtained if the expropriated property were broken up into lots and sold as such. Even the defendant’s appraisers gave a per acre value of the land rather than a per lot value. Therefore, our decision in Lake Charles Harbor and Terminal Dis *185 trict v. Prestridge, 182 So.2d 334 (La.App. 3d Cir., 1966) is inapplicable here.
For the foregoing reasons, the judgment of the trial court is affirmed at defendant-appellant’s costs.
Affirmed.

. There is no issue as to the improvements on the land; for there were no improvements other than a fence, the value of which was stipulated to be $280.00.